IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.    ) | Criminal No: 1:22-CR-118 |
| ) | The Honorable Rossie D. Alston, Jr. |
| HOPETON FITZGERALD FLETCHER, ) | Sentencing: April 19, 2023 |
| Defendant.   ) | |

**<u>DEFENDANT'S POSITION WITH RESPECT TO SENTENCING</u>**

The defendant, Hopeton Fitzgerald Fletcher, by and through undersigned counsel, pursuant to 18 U.S.C. §3553(a) and §6A1.3 of the United States Sentencing Guidelines (hereinafter U.S.S.G.), and submits the following Position with Respect to Sentencing. In accordance with U.S.S.G. §6A1.2 Counsel certifies that he reviewed the Presentence Investigation Report (hereinafter PSR) with Mr. Fletcher including pages 19 through 21 that enumerate the mandatory, standard, and special conditions of supervision. Further, Mr. Fletcher agrees that the Guidelines are calculated correctly with a Total Offense Level of 27, Criminal History Category III, and corresponding guideline range of 87 to 108 months.

However, this sentencing range fails to adequately address certain specific characteristics of Mr. Fletcher and it overstates his culpability in the present case. Based on the considerations set forth in 18 U.S.C. §3553(a) and the Sentencing Guidelines, Mr. Fletcher requests that this Court impose a variant sentence of thirty-six months followed by a five-year term of supervised release. This sentence is sufficient, but not greater than necessary, to address these considerations.

**I.   <u>Considerations Under §3553(a)</u>**

It is well settled that the Sentencing Guidelines are advisory following the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738, 757 (2005). While Federal Courts

must still consider the defendant's sentencing exposure under the guidelines, the court is now free to "tailor the sentence in light of other statutory concerns". *Booker*, at 764-65; see also *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (the court shall consider the sentencing guidelines range as well as other relevant factors set forth in 18 U.S.C. §3553(a) before imposing sentence). As a result, this Court may consider permissible statutory factors such as: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant, and to provide the defendant with reasonable rehabilitative opportunities; the kinds of sentences available; the guideline range; the need to avoid unwanted sentencing disparities; and the need for restitution. Upon consideration of these factors, a sentencing court may find that a case falls outside the "heartland" contemplated by the guidelines, that "the guidelines sentence itself fails properly to reflect the §3553(a) considerations", or that "the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 345-46 (2007). Under recent decisions of the United States Supreme Court, *see e.g., Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007)*; and the United States Court of Appeals for the Fourth Circuit, *see e.g., United States v. Pauley, 511 F.3d 468 (4th Cir. 2007)*; other considerations exist that demand a lower sentence than that suggested by the Sentencing Guidelines. Therefore, if this Court considers Mr. Fletcher's offense in the context of these factors, it is appropriate to impose a sentence of thirty-six months followed by a five-year term of supervised release.

A. **Nature and Circumstances of the Offense**

As the government describes in its Position with Respect to Sentencing, from June 2019 until December 2019, Mr. Fletcher served as a middleman between Caswell Richards (the seller) and Simeon Orekoya (the buyer) for the distribution of kilogram quantities of cocaine in and around the Maryland region. Mr. Fletcher owns an auto body shop in Maryland and met both individuals through his business. Mr. Richards approached Mr. Fletcher and asked him if he knew anyone who would be interested in purchasing cocaine who thereafter introduced him to Mr. Orekoya. Mr. Fletcher then allowed his shop to be used for drug deals and coordinated the deals by phone between the men because Mr. Richards preferred not to speak with Mr. Orekoya directly.

Between June and September of 2019, Mr. Fletcher middled deals between the two men on approximately five occasions. Then from September 28, 2019, until December 2019 when Orekoya was arrested, Mr. Fletcher middled 1 kilogram per week transactions between the two. In total, Orekoya estimated that he purchased approximately 20 kilograms of cocaine. Mr. Fletcher did not receive a traditional "cut" of these transactions. Instead, Richards would pay Mr. Fletcher approximately an additional $500 for legitimate car work that Mr. Fletcher did for Richards. However, these payments did not correspond with the transactions. Finally, while it was reasonably foreseeable that the transactions would result in further distribution, Mr. Fletcher did not have knowledge of the conspiracy beyond the transactions that he middled.

Shortly after the end of the conspiracy, on March 11, 2020, agents approached Mr. Fletcher at his auto shop and served him with a target letter. At that time, Mr. Fletcher cooperated with law enforcement and described the nature of the conspiracy to the agents.

**B.       History and Characteristics of the Defendant**

Mr. Lemons is 53 years old. He was born and raised in Kinston, Jamaica, the fifth of eight children. After graduating from high school he worked as a butcher and a carpenter. At the age of 23 he immigrated to the United States in approximately 1991 and is a permanent resident. In 1998, Mr. Fletcher opened Fletcher Auto Repair where he has two employees. Mr. Fletcher has worked very hard for the last 25 years to maintain this business and provide for his family.

Mr. Fletcher has two children from his first marriage, ages 19 and 17, whom he enjoys spending weekends with. Mr. Fletcher has four adult children from other relationships who reside in Jamaica and Georgia. He is currently married and he lives with his wife and her four minor children ages 18, 15, 14, and 10. Mr. Fletcher has an active relationship with all of his many children whether biological or through marriage.

Mr. Fletcher regrets his actions and is deeply sorry for his conduct. He accepts full responsibility for his offense conduct. There is no excuse or justification for his conduct. As a result of the instant offense, Mr. Fletcher faces possible removal proceedings. Of course, this is the result of his offense conduct and he will likely not be able to continue operating his business and he will not be present for his children that reside in the United States.

**C.       Equity, Fairness, and Deterrence**

A sentence of thirty-six months followed by a five-year term of supervised release would sufficiently reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes. The current offence conduct ended over three years ago and since that time, Mr. Fletcher has demonstrated that he is no longer a risk to reoffend. This accomplishment is noteworthy because he was not

4

on supervision until he was arrested for the instant offense on April 6, 2022. Mr. Fletcher's dedication to leave the instant criminal conduct behind is confirmed by his positive adjustment to pretrial supervision. Mr. Fletcher was compliant with all aspects of his bond conditions. He tested negative on all drug tests after he initially tested positive for marijuana at the time of his arrest and complied with recommended substance abuse counseling classes.

Although Mr. Fletcher has a Criminal History Category III, his prior criminal history is relatively minor. In 2008, he was convicted of driving on a suspended license and received a fine. In 2012, he was convicted of DUI and was sentenced to one year of supervised probation. Finally, in 2018 he was convicted of DUI and sentenced to 30 days with 20 days suspended. It is noteworthy that Mr. Fletcher does not have any prior convictions or charges that involve drugs, guns, or violence and his longest, and only, period of incarceration was 5 days for a 10 day sentence. A sentence of thirty-six months will send a clear message to Mr. Fletcher that any future crimes will not be tolerated.

Mr. Fletcher also appears to be a low risk to reoffend based on available objective empirical evidence. According to the United States Sentencing Commission, a male Criminal History Category I offender over the age of 50, has a historical general recidivism rate of 6.2%, which is *the lowest reported recidivist rate* in the Commission's study.[1] While Mr. Fletcher has a Criminal History Category III, those offenses are relatively minor and do not demonstrate a pattern of drug related offenses. In fact, ongoing substance abuse counseling will likely address any risk of recidivism more effectively than incarceration. The general recidivist rates coupled

---

[1] *See* U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 28 Ex. 9 (2004) (listing the recidivism rates for various types of offenders and considering demographics such as gender, age, race, drug use, marital status, etc.), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

with Mr. Fletcher's history and personal characteristics leave little doubt that he will not reoffend and strongly militate in favor of a substantial variance from the advisory Guideline range.[2]

Although general deterrence remains a required consideration under § 3553(a), there is little evidence to support a finding that harsh sentences deter future criminal conduct. The unique combination of motivation and circumstance that lead otherwise law-abiding citizens to risk prosecution and imprisonment are not so easily overcome by the simple imposition of lengthy sentences. While such a theory might be appealing on its face, the reality is that there is little to no difference in the deterrent effect between probation and imprisonment.[3] Indeed, available research suggests that the *certainty* of being caught and punished carries far greater deterrent effect than the *severity* of the punishment.[4] More importantly, no one with knowledge

---

[2] *See United States v. Darway*, 255 Fed. Appx. 68, 73 (6th Cir. 2007) (upholding downward variance on basis of defendant's first offender status); *United States v. Urbina*, slip op., 2009 WL 565485, *3 (E.D. Wis. 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history and strong family ties); *See*, *e.g.*, *United States v. Huckins*, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (a district court "may weigh a defendant's lack of a criminal record" in deciding whether to grant a downward variance from the advisory Guidelines range "even when the defendant has been placed into a criminal history category of I"); *United States v. Smith,* 2008 WL 1816564 *4 (4th Cir. 2008) (affirming downward variance based in part on the defendant's "exemplary life" and lack of a criminal history); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants with zero criminal history points are less likely to recidivate than all other offenders"); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Nellum*, 2005 WL 300073 at *3 (N.D. Ind. Feb. 3, 2005) (granting variance to 57-year-old defendant because recidivism drops with age); *United States v. Ward,* 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

[3] See Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 PRISON J. 48S, 50S-51S (2011) (according to "the best available evidence…prisons do not reduce recidivism more than noncustodial sanctions"); see also Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006) ("increases in severity of punishments do not yield significant (if any) marginal deterrent effects.").

[4] S*ee also* David Weisburd *et al*., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."); *see also* Symposium, U.S.S.C., Federal Sentencing Policy for Economic Crimes and New Technology Offenses, Plenary Session I, "What Social Science Can Contribute to Sentencing Policy for Economic Crimes," at 22 (Oct. 12, 2000) ("One consistent finding in the deterrent literature is that the certainty rather than the severity of punishment seems to be the most effective deterrent."), *available at*

of this case and the consequences of Mr. Fletcher's arrest, plea, and sentencing, would begin or continue a course of criminal conduct merely because this Court imposed a variant sentence. In fact, the collateral consequences of being a convicted felon and facing possible removal serve as an additional deterrent both to Mr. Fletcher and the community.

The recommended sentence will serve as an appropriate deterrent for those who would consider engaging in similar conduct as Mr. Fletcher. Regardless of the ultimate sentence, Mr. Fletcher and his family have suffered significantly as a result of his conduct and the resulting conviction, incarceration, and possible removal from the United States. His conviction and punishment are meaningful reminders that even a life characterized by over 50 years of hard work and honest behavior can be undermined by a lack of judgment towards the end of a long career. *See e.g., United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (variance based on "isolated mistake" in otherwise long and entirely upstanding life); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (defendant was a "law abiding citizen, who [did] an incredibly dumb thing").

D.      **The Guideline Range / The Need to Avoid Sentencing Disparities**

A sentence of thirty months followed by a five-year term of supervised release adequately reflects the guideline range and avoids unwarranted sentencing disparities. Mr. Fletcher is 53 years old. While he does have a criminal history that results in a Criminal History Category III, it is the result of two DUI convictions. Mr. Fletcher received 1 criminal history point each for a DUI conviction in 2012 and 2018 and 2 criminal history points because he was on probation during the first three months of the instant offense. Due to the nature of the prior

---

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/economic-crimes/20001012-symposium/cPlenaryI.pdf.

convictions and the exponential increase due to being on pronation, a variant sentence is appropriate.

Section 4A1.3(b)(1) of the Guidelines suggests that a downward departure may be appropriate where the defendant's criminal history substantially over represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes. Application Note 3 explains that a departure may be appropriate if for example a defendant had two minor misdemeanor convictions close to ten years prior to the instant offense.

While Mr. Fletcher's prior convictions were minor, they were not ten years prior to the instant offense and a departure may not be justified, however a variant sentence is appropriate because they were minor in nature and they are not drug related. Mr. Fletcher's criminal history score also overrepresents the likelihood that he will commit other crimes because he has not re-offended since the instant conspiracy ended in December 2019.

The likelihood that Mr. Fletcher will face removal is also the basis for a variant sentence. The Department of Homeland Security will likely lodge a detainer against Mr. Fletcher which will preclude his participation in pre-release programs offered by the Bureau of Prisons. Courts have recognized that similarly situated defendants will not be authorized for release to a halfway house upon reaching the last six months of their sentence and held that a downward departure may be appropriate. *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1999). Moreover, once Mr. Fletcher serves the sentence imposed by this Court, he will face additional months in ICE custody while the status of his residency in the United States is resolved because he will be subject to mandatory detention without bond.

## II. <u>Conclusion</u>

For the foregoing reasons, Mr. Fletcher respectfully requests that this Court impose a sentence of thirty-six months followed by a five-year term of supervised release. Mr. Fletcher further requests that this Court recommend that he participate in the RDAP program and receive a BOP designation to a facility near his family.

Filed: April 13, 2023.

Respectfully submitted,

Hopeton Fitzgerald Fletcher

By: <u>/s/ Andrew M. Stewart</u>     .
ANDREW M. STEWART, ESQ.
Virginia State Bar No. 68683
Attorney for the Defendant
2111 Wilson Boulevard, 8th Floor
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2023, I electronically filed the foregoing motion with the clerk of the court using the CM/ECF system, which will send an electronic copy to the following:

Bineane Metsch
Assistant United States Attorneys

and

Lauren Hahn
Special Assistant United States Attorney (LT)
U.S. Attorney's Office, Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: 703-299-3700

By: */s/ Andrew M. Stewart* .
ANDREW M. STEWART, ESQ.
Virginia State Bar No. 68683
Attorney for the Defendant
2111 Wilson Boulevard, 8th Floor
Arlington, VA 22201
Phone: 703-248-0626
Fax: 703-248-8971
andrew.m.stewart.esq@gmail.com